# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMANDA ALEXANDER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1343-M |
| | ) | |
| HALLIBURTON COMPANY, HALLIBURTON ENERGY SERVICES, INC., and SAIC ENERGY, ENVIRONMENT & INFRASTRUCTURE, LLC, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| MITCHELL L. McCORMICK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1272-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| KRAIG BICKERSTAFF, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1305-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| FRANK D. ELDRIDGE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1306-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| ROBIN L. BOOTH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1308-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| HARMEN ARLEN MAY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1309-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| LESLIE T. CAMPBELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1311-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| EVELYN BERNICE SOUTHERLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1312-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| TERRY CHEEK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-116-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| STEPHEN G. JONES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1322-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| BRUCE WILMES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1323-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) ) ) | |
| | ) | |
| Defendant. | ) | |

| | |
|---|---|
| GLYNN ALLEN, et al., | ) |
| | ) |
|                Plaintiffs, | ) |
| | ) |
| vs. | )   Case No. CIV-13-715-M |
| | ) |
| HALLIBURTON ENERGY SERVICES, INC., | ) |
| | ) |
|                Defendant. | ) |

# **ORDER**

Before the Court is defendant Halliburton Energy Services, Inc.'s ("HESI") Motion and Brief in Support of Summary Judgment Based on Plaintiffs' Failure to Show Legally Cognizable Injury, filed April 24, 2015. On May 27, 2015, the parties filed a Stipulation on Scope of Defendant's Motion for Summary Judgment Regarding Cognizable Injury. On May 29, 2015, plaintiffs filed their responses, and on June 11, 2015, HESI filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction

From the mid-1960s until 1991, HESI cleaned missile motor casings for the United States Department of Defense and its contractors on a portion of its Osage Road facility near Duncan, Oklahoma ("Site"). Plaintiffs allege that, as a result of those operations, the groundwater at the Site became contaminated with perchlorate[1], which has since migrated offsite and into the private water wells of numerous area residents. HESI does not contest the fact that this has occurred. In August

---

[1]The main component of rocket fuel is ammonium perchlorate, which is a salt. The salt dissolves in water. Perchlorate affects the uptake of iodine by the thyroid. *See* August 2011 LAND, Perchlorates in Duncan Ground Water, attached as Exhibit 6 to HESI's motion for summary judgment.

4

2011, HESI entered into a Consent Order with the Oklahoma Department of Environmental Quality requiring investigation and remediation at the Site.

In 2008, the United States Environmental Protection Agency ("EPA") issued an Interim Drinking Water Health Advisory for Perchlorate ("EPA Health Advisory") of 15 ppb$^2$ in drinking water. Health advisories "establish non-regulatory concentrations of drinking water contaminants at which adverse health effects are not anticipated to occur over specific exposure durations (one day, ten days, a subchronic period, several years, and a lifetime)" and "serve as informal technical guidance to assist Federal, State and local officials, and managers of public or community water systems in protecting public health when emergency spills or contamination situations occur." EPA Health Advisory at 1, attached as Exhibit 5 to HESI's motion for summary judgment. Additionally, health advisories "are not legally enforceable Federal standards and are subject to change as new information becomes available." *Id.* The EPA issued the EPA Health Advisory "to assist state and local officials in advance of a final regulatory determination." *Id.*

Plaintiffs commenced the above-referenced actions seeking compensation and other relief for injuries to their properties, loss of use and enjoyment of their properties, personal annoyance, inconvenience, aggravation, mental anguish, emotional distress, and discomfort, and other related harms caused by perchlorate that has migrated from the Site. Plaintiffs assert claims under a number of different legal theories, including negligence, nuisance, and trespass. Certain plaintiffs are owners of properties that do not currently suffer from perchlorate groundwater contamination ("non-contaminated property plaintiffs"); other plaintiffs are owners of properties that currently suffer from

---

$^2$Parts per billion, or ppb, is a measure of very low concentrations of a substance in water, soil, and other media.

perchlorate groundwater contamination, but the extent of the contamination varies among the plaintiffs. HESI now moves this Court for summary judgment as to the non-contaminated property plaintiffs and as to those plaintiffs whose properties currently suffer from low levels of perchlorate, specifically levels below 15 ppb, the EPA Health Advisory level ("low level contaminated property plaintiffs").[3]

II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

---

[3]The parties have stipulated that HESI is not challenging the sufficiency of individual testimony of plaintiffs regarding the impacts that the disclosure of contamination had on plaintiffs' lives. *See* Stipulation on Scope of Defendant's Motion for Summary Judgment Regarding Cognizable Injury.

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.  Discussion

HESI asserts that certain plaintiffs are unable, as a matter of law, to establish a legally cognizable injury. Specifically, HESI contends that the non-contaminated property plaintiffs' claims fail for lack of standing. HESI further contends that the low level contaminated property plaintiffs cannot show an actionable, legally cognizable injury because their well water is within the level that the EPA has determined is perfectly safe to drink. Finally, HESI contends that the claims of certain allegedly "currently impacted" plaintiffs fail for lack of proof because their groundwater has never been tested for perchlorate or it has been tested and the results show perchlorate at levels below background.

A.  Standing

To establish Article III standing, a plaintiff must show that he has "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). HESI asserts that the non-contaminated property plaintiffs are seeking in these cases to recover for future injuries they will suffer when, and if, the perchlorate migrates to their properties. HESI, therefore, contends that these plaintiffs must show that their injuries are imminent and certainly impending in order to have standing to bring their claims and that these plaintiffs have not made the requisite showing. Plaintiffs assert that they have injuries that have already occurred; thus, their injuries are actual, concrete injuries. Plaintiffs, therefore, contend that any argument regarding whether their injuries are "imminent" is irrelevant.

7

The Court has previously found that no actual physical invasion of property, i.e., contamination of property, is required to state a claim for nuisance. *See* March 31, 2014 Order in *McCormick, et al. v. Halliburton Co., et al.*, CIV-11-1272-M, at 5. The Court further found:

> that a claim for interference with loss of use and enjoyment of property based upon threatened contamination of a plaintiff's underground water is not barred as a matter of law. The Court finds that whether a plaintiff could maintain such a claim would be a fact specific determination. Specifically, whether such a claim could be maintained would depend on facts addressing the reasonableness of the alleged loss of use and enjoyment, including, but not limited to, how close the contamination is to a plaintiff's property, the direction the contaminated groundwater is moving, the uses of the specific property, etc.

*Id.* at 5-6. Having reviewed the parties' submissions, and the complaints in the above-cases, the Court finds that the non-contaminated property plaintiffs are alleging a claim for interference with loss of use and enjoyment of property based upon threatened contamination of their underground water. Further, the Court finds that the non-contaminated property plaintiffs are not seeking relief for future injuries but are seeking relief for current and past injuries from this loss of use and enjoyment. Thus, the Court finds HESI's argument regarding the non-contaminated property plaintiffs' failure to show their injuries are imminent and certainly impending, an argument that only applies to future damages, misses the mark.[4] Additionally, the Court finds that the non-contaminated property plaintiffs' alleged current and past injuries from their alleged loss of use and enjoyment are actual, concrete injuries and the non-contaminated property plaintiffs have standing to pursue their claims.

---

[4]As HESI's arguments regarding plaintiffs' experts basing their predictions on the false assumption that no remediation efforts would be made and offering no opinion as to what the level of contamination on these properties will be in the future also only relate to the issue of standing based upon future injuries, the Court finds these arguments also miss the mark.

Accordingly, the Court finds that HESI is not entitled to summary judgment as to the claims of the non-contaminated property plaintiffs on the basis of standing.

B. Contamination levels below EPA Health Advisory

HESI contends that the low level contaminated property plaintiffs have no legally cognizable claim because the groundwater levels of perchlorate at these properties are below the 15 ppb level set forth in the EPA Health Advisory. HESI asserts that an overwhelming majority of courts have held there is no actionable injury where a chemical is present at or below the safe level set by the regulatory agency responsible for determining what levels of that substance adequately protect human health. Having carefully reviewed all of the cases cited by HESI, the Court finds that HESI's assertion is an overstatement of the law. A majority of the cases cited by HESI are clearly distinguishable from the instant cases, and there is no clear majority ruling that private parties, as opposed to public water suppliers, have no legally cognizable claim if the level of contamination is below the safe level set by the regulatory agency responsible.

Additionally, the EPA Health Advisory at issue in these cases is "not [a] legally enforceable Federal standard[]". *See* EPA Health Advisory at 1. Further, it is "subject to change as new information becomes available." *Id.* Finally, the EPA issued the EPA Health Advisory "to <u>assist</u> state and local officials in advance of a final regulatory determination." *Id.* (emphasis added). Accordingly, due to the interim, non-regulatory nature of the EPA Health Advisory, the Court finds that the EPA Health Advisory cannot serve as any groundwater contamination standard by which to judge whether a plaintiff has a legally cognizable claim.

Further, under the Oklahoma Environmental Quality Code, pollution is defined in pertinent part as "the release of any liquid, gaseous or solid substance into the environment in quantities

which are or will likely create a nuisance or which render or will likely render the environment harmful or detrimental or injurious to public health, safety or welfare. . . ." Okla. Stat. tit. 27A, § 2-1-102(12). Additionally, Oklahoma statutorily defines nuisance, in pertinent part, as follows: "[a] nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either: First, Annoys, injures or endangers the comfort, repose, health, or safety of others; . . . ." Okla. Stat. tit. 50, § 1. In the cases at bar, plaintiffs have submitted evidence that groundwater levels of perchlorate below the 15 ppb level set forth in the EPA Health Advisory do create a health hazard.[5] Specifically, plaintiffs have submitted evidence from their experts regarding the health hazards of perchlorate at levels lower than 15 ppb and have referenced regulatory actions of several states that have set perchlorate standards at levels much lower than 15 ppb. Based upon this evidence, the Court finds that there is a genuine issue of material fact as to whether perchlorate at levels lower than 15 ppb endangers the health of others.

Accordingly, the Court finds that HESI is not entitled to summary judgment as to the claims brought by the low level contaminated property plaintiffs.

C. Property-specific test results

HESI contends that property-specific test results are necessary to determine whether any given plaintiff can recover on their contamination-based claims. The cases cited by HESI, however, do not specifically require property-specific test results but only require reliable evidence of contamination. Plaintiffs have presented expert testimony regarding the contamination level on

---

[5]In a large number of the cases cited by HESI, the plaintiffs did not present any evidence that lower levels of the contaminant created health hazards.

10

plaintiffs' properties.[6]  Accordingly, the Court finds that HESI is not entitled to summary judgment on this basis.

IV.     Conclusion

For the reasons set forth above, the Court DENIES HESI's Motion and Brief in Support of Summary Judgment Based on Plaintiffs' Failure to Show Legally Cognizable Injury.

**IT IS SO ORDERED this 2nd day of July, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]Any reliability determinations regarding this expert testimony will be made in relation to specific *Daubert* motions that have been filed.